# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALICE LEITTER, CHRISTOPHER BOYLE, DORIS ANDERSON, RUSSELL ANDERSON, NOREEN DAINES, and ELLEN BROWER,<br><br>  Plaintiffs,<br><br>v.<br><br>RICHARD ARMSTRONG, in his Official Capacity as Director of the Idaho Department of Health and Welfare,<br><br>  Defendant. | Case No. 1:10-cv-361-BLW<br><br>**ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

Before the Court is Plaintiff's Motion for Temporary Restraining Order (Dkt. 3). The Court has considered the parties' briefing, including letter briefs submitted after hearing, and oral argument from the hearing held on September 3, 2010. For the following reasons, the motion is GRANTED in part, DENIED in part.

## BACKGROUND

Plaintiffs are developmentally disabled individuals, and seek to represent a class of other developmentally disabled individuals. The Plaintiffs and the proposed class members are all individuals with a tested functional age of no more than eight years. Some of them have had guardians appointed, some have not. Defendant Armstrong is the Director of the Idaho Department of Health and Welfare (Department) and, pursuant to Idaho law, responsible for directing the exercise of the Department's powers, including the power to

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER - 1

administer public assistance programs. Defendant Armstrong, in his official capacity, is aware of the developmental disabilities of the Plaintiffs and the members of the class Plaintiffs seek to represent.

Due to fiscal constraints, the 2010 Legislature did not appropriate enough state general funds to fully fund the programs administered by the Department. As a result, the Department determined that it had to reduce payments made to certain individuals under the state's Aid to the Aged, Blind and Disabled (AABD) program. The Department changed the eligibility requirement so that all individuals receiving the AABD benefits must receive Supplemental Security Income, capped the cash assistance for certain living arrangements, and terminated the cash assistance for those living in a Certified Family Home (CFH). In this way, the Department believed it would level benefits between the DD Waiver participants and the A&D Waiver participants living in CFHs. Before the rule change, Plaintiffs and the class they seek to represent were the only persons residing in a CFH to receive AABD benefits. All other residents in CFHs did not receive AABD benefits.

The Department took several steps to implement the rule change. On April 29, 2010, the Department sent a letter to affected CFH providers. The Department issued a news release on April 30, 2010, explaining the change in eligibility. On May 4, 2010, the Department published notice of the temporary and proposed rule in the Idaho administrative bulletin. The Department sent individual notices to both CFH residents and to CFH providers on May 10, 2010. More detailed notices were subsequently sent and the effective date of the temporary rule was changed from July 1, 2010 to September 1, 2010.

Disability Rights Idaho (DRI) is Idaho's designated Protection and Advocacy System for people with disabilities. DRI's Mission Statement is to "assist people with disabilities to protect, promote and advance their legal and human rights, through quality legal, individual, and system advocacy." According to the parties in this case, DRI is aware of the cuts to the AABD benefits, and has responded by referring affected individuals to legal aid. It is unclear how many affected individuals have been referred to legal aid by DRI. However, Defendants assert that, of the 1200 affected individuals, administrative appeals have been pursued by 79 who are not cared for by a family member, 29 who are cared for by a family member, and 19 others whose care arrangement has yet to be determined.

## DISCUSSION

The United States Supreme Court fairly recently reiterated the standard for a preliminary injunction in *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008). A plaintiff seeking a preliminary injunction must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. A preliminary injunction is "an extraordinary remedy never awarded as of right." *Id.* at 376. The standard for issuing a preliminary injunction is identical to that for issuing a temporary restraining order. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).

1. **Success on the merits**

The issue of Plaintiffs' likelihood of succeeding on the merits turns on the Court's analysis of their due process claim under 42 U.S.C. § 1983. The Fourteenth Amendment

provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. In this case, Plaintiffs claim a property interest in continued receipt of AABD benefits. Regarding the property interest in a benefit, the Supreme Court has held that one "must have more than an abstract need or desire . . . [or] unilateral expectation of it . . . [but must] have a legitimate claim of entitlement to it." *Board of Regents of State College v. Roth*, 408 U.S. 564, 577 (1972). Here, Plaintiffs' claim to AABD benefits arises from Idaho's Public Assistance Law, I.C. § 56-201 et seq. The state statute provides that a recipient of benefits, aggrieved by a decision of the state, "shall be entitled to appeal . . . and shall be afforded reasonable notice and opportunity for a fair hearing by the state department." I.C. § 56-216.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976), *citing Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Ninth Circuit has questioned the necessity of pre-termination proceedings where a state agency "makes a broadly applicable, legislative-type decision" to reduce benefits. *Curlott v. Campbell*, 598 F.2d 1175, 1181 (1979). In that case, the Court addressed reductions in cost of living (COLA) allowances to federal civil employees, and found that judicial review after promulgation of the rule was proper under the circumstances. *Id.* In so holding, the Court in *Curlott* reasoned that a reduction in COLA payments "neither would, nor did, imperil life," as would a termination of welfare benefits which "provide the means by which welfare recipients live." *Id.*, *distinguishing Goldberg v. Kelly*, 397 U.S. 254 (1970). The *Curlott* Court also quoted the Supreme Court's finding that a "claim to a predeprivation hearing as a matter of constitutional right rests on

the proposition that full relief cannot be obtained at a postdeprivation hearing." *Id.*, *quoting Mathews*, 424 U.S. at 331.

Here, Plaintiffs assert that a reduction in AABD benefits will result in Plaintiffs' discharge from their CFH, and ultimately to their institutionalization. If the benefit reduction is later shown to be erroneous, the harm would arguably be irrevocable, so that full relief would be unobtainable. In light of the circumstances, the case law cited herein, and I.C. § 56-216, the Court here finds that predeprivation hearings are warranted, and thus meaningful notice of the benefit reduction is necessary.

Defendant provided indirect notice through the IDHW website, a news release, and notice on the Idaho administrative bulletin. Defendant provided direct notice to the CFH residents and CFH providers. The parties agree that Plaintiffs and members of their proposed class function at a level of no more than eight years of age. These individuals lack sufficient capacity to meaningfully understand a notice of the reduction in their AABD benefits. The Court finds that actual notice to the members of the proposed class would be meaningless, and that actual notice must be given to someone competent to meaningfully understand the notice, and who is in a position to act on the affected individual's behalf.

According to Defendant, about 1200 individuals living in CFHs, are affected by the AABD benefits reduction. (Opp'n Mem., Dkt. 6 at 3.) Of these, about 67% – or roughly 800 – have a CFH provider who is "a parent, sibling, child, or other close relative." (Id.) The Court finds that a CFH provider who is a family member of close relation as described by Defendant is in a position to act on behalf of the CFH resident. The family-member provider has not only a familial interest in the CFH resident, but also a financial interest in

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER - 5

seeing that the payments continue, and a care-giving relationship with the CFH resident. As a CFH provider, they presumably also have capacity to understand and act upon the notice in the interest of the resident. Thus, as to these 800 some affected individuals, the Court finds that sufficient notice has been given.

For those individuals affected by the benefits reduction who are living with non-family CFH providers, 79 are reported to have filed appeals through the prescribed administrative process. By virtue of this fact, the Court finds that sufficient notice has been provided to these residents as well.

The remaining group of affected individuals include those who live with non-family CFH providers, and who have not filed an appeal. Defendant argues that actual notice to the CFH providers satisfies notice requirements because the CFH providers have an obligation to provide daily care to residents, and likely have a close personal relationship with their residents by virtue of that care. A provider's obligation to provide care and services is outlined in the admission agreement. IDAPA 16.03.19.260.02(c). The regulations describe responsibilities for care and assistance that mostly contemplate the resident's daily routine, and basic matters of medical or insurance needs. But nothing in the regulations requires a provider to pursue an appeal of benefit reductions on behalf of their resident. The Court finds that a CFH provider without a family relationship to his resident is not in a position in which he will meaningfully receive and act upon notice of a reduction in the resident's AABD benefits. Notice to these non-family CFH providers is therefore insufficient.

In summary, the Court finds that sufficient notice has been given to affected individuals who live with family-member CFH providers, or who have already filed an

appeal of the benefit reduction. As to these individuals, Plaintiffs are unlikely to prevail on the merits of their due process claim. As to the individuals who live with non-family CFH providers, and who have yet to file an appeal, the Court finds that Plaintiffs are likely to prevail, and have thus established this first element for a temporary restraining order.[1]

**2.     Irreparable harm**

A "possibility" of irreparable harm is insufficient basis for a preliminary injunction; irreparable injury must be "likely" in the absence of an injunction. *Winter*, 129 S.Ct. at 374. As addressed briefly above, Plaintiffs argue that the reduction in benefits will render affected individuals unable to pay the cost of room and board in their CFHs, or any other CFH at the current market rate. The inevitable harm that will result, according to Plaintiffs, is discharge upon the residents' default of their admission agreements, which will in turn cause severe emotional distress, and ultimately, the need for institutional care.

Where the CFH provider is "a parent, sibling, child, or other close relative," the Court agrees with Defendant that irreparable harm is unlikely. As to the roughly 400 individuals living with CFH providers who are not family members, harm is much more likely. Defendant argues that a CFH provider's care-giving relationship with and duties to their residents are adequate assurances that the CFH providers will not discharge residents unable

---

[1] Defendant contends that, for an undetermined number of affected individuals who have been appointed a guardian or conservator, the notice to the CFH provider or the affected individual should be deemed adequate. It is true that, under applicable regulations, a CFH provider's admission agreement must be signed by a resident's legal guardian or conservator, where they exist. IDAPA 16.03.19.270.01(n). The Defendant argues from this, that actual notice given to CFH providers was sufficient to meaningfully notify legal guardians or conservators who signed admission agreements, of the benefit reduction affecting the subject CFH residents. However, the Court disagrees. Notice sent to the CFH provider would not necessarily result in the notice being forwarded in a timely fashion to the resident's guardian or conservator. Likewise, notice sent to the resident would not necessarily result in the notice being forwarded to the resident's guardian or conservator. Thus, the Court concludes that the Defendant's sending notice to the affected individual and the CFH provider was not adequate notice for those individuals who have guardians or conservators.

to pay room and board due to the reduction in AABD benefits. However, one cannot presume that the provider will continue to provide care and services to a resident, as they would to a close family member. As noted above, a provider's obligation to provide care and services is limited to terms in the admission agreement which also guarantees the provider will be paid each month by the resident, or else the resident will be in default. IDAPA 16.03.19.260.02(c).

Declarations of several CFH providers indicate that they may be, or are, making the tough decision to discharge residents despite their concern for the residents' well-being. The regulation cited by Defendant, regarding CFH provider duties, indicates only that providers must provide care and assistance with residents' activities of daily living. IDAPA 16.03.18.170. There is no requirement that a CFH provider continue to provide care despite a resident's failure to pay monthly room and board fees. While it is likely that family members will assume the burden of reductions in government assistance, the Court cannot expect that non-family members will assume a similar financial burden absent a statutory or regulatory requirement. Plaintiffs argue that, while a number of CFH vacancies may be available, very few to none are affordable to those affected by the AABD benefits reduction. (See Williams Dec., Dkt. 3-13, ¶ 11.) Defendants do not dispute this. Given the facts and argument presented, the Court finds that Plaintiffs have sufficiently demonstrated irreparable harm as to the affected individuals living with non-family CFH providers.

### 3. Balance of equities and public interest

In considering whether a preliminary injunction or temporary restraining order should issue, courts "must balance the competing claims of injury and must consider the effect on

each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376. According to Defendant, the Governor has already determined the necessity of the temporary rule reducing AABD benefits, upon evaluation of the public health, safety, and welfare, and the need to conserve scarce fiscal resources. (Def. Letter Br., Dkt. 12, citing I.C. § 67-5226(1)(a).) Defendant cites no authority that approval of the benefit reduction as a temporary rule is determinative for analysis of the balance of equities or public's interest.

The Court here finds that the harm to the roughly 400 affected individuals if the injunction is not granted outweighs the injury to Defendant in delaying the reduction in benefits. Indeed, Defendant already postponed the effective date for the benefits reduction from July 1 to September 1, 2010, on its own determination that notice was insufficient. There being no evidence that an additional temporary delay would unduly harm Defendant or the public, the Court finds that the 'balance of equities' and 'public interest' elements for a preliminary injunction are also met, thus satisfying all requirements for a temporary restraining order as to the described subset of affected individuals.

**4.    Bond requirement**

In their motion, Plaintiffs request waiver of the bond required for a temporary restraining order under Federal Rule of Civil Procedure 65(c). Under that rule, a movant must give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65(c). District courts have discretion to determine the amount of security required. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). The Court here finds, given the circumstances and the apparent undisputed indigency of Plaintiffs, that no bond is

required.

## CONCLUSION

For the reasons stated above, the Court will grant Plaintiffs' motion for a temporary restraining order as to those affected individuals who have not yet appealed the benefit reduction and who do not live with a family-member CFH provider. The burden shall be on Defendant to identify those individuals who are members of this subset of individuals affected by benefit reduction, and those who are not. Affected individuals are presumed to be a member of those affected individuals for whom the temporary restraining order applies, unless specifically determined to have filed an appeal or to live with a family-member CFH provider.

The temporary restraining order will remain in effect until Defendant has proposed, and the Court has approved, a plan to provide meaningful notice of the benefit reduction to these individuals. As noted above, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976), *citing Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Court assumes that the Defendant will take advantage of such flexibility in proposing a system of notice that takes into account the finite resources available, the limited cognitive ability of the affected individuals, and the existence of entities such as DRI and Idaho Legal Aid. Thus, the plan might involve (1) the appointment of guardians for each member of the group, as proposed by Plaintiffs under IC § 56-219; (2) the sending of notice to the guardian or conservator of those affected individuals who have such representatives; (3) an individual social worker's assessment of each affected individual; or (4) an automatic appeal of the benefit reduction on

behalf of the affected individuals by an organization like DRI. The Court recognizes that a process requiring Defendant to ensure that each affected individual actually understands that his or her AABD benefits are being terminated could be very costly, and even counter-productive. The Court thus leave it to Defendant to identify and present such process to the Court for approval. Once approved, the Court will enter an order setting a deadline for implementation of the process, and to lift the restraining order.

**ORDER**

IT IS HEREBY ORDERED that

1. Plaintiffs' Motion for Temporary Restraining Order (Dkt. 3) is DENIED as to those affected individuals who live with family-member CFH providers, or who have already filed an appeal.

2. Plaintiffs' Motion for Temporary Restraining Order (Dkt. 3) is GRANTED as to the remaining affected individuals – those who live with non-family CFH providers, and who have not yet filed an appeal of the benefit reduction.

3. The burden is on Defendant to identify affected individuals to whom the temporary restraining order does not apply; however, individuals affected by the benefit reduction are presumed to be subject to the temporary restraining order until they have been specifically identified by Defendant as clearly falling within the group of individuals identified in paragraph 1 of this order.

4. The restraining order shall remain in effect until Defendant has proposed, and the Court has approved, a plan for Defendant to provide meaningful notice to the individuals identified in paragraph 2 of this order.

5. In light of the undisputed indigency of Plaintiffs, no bond shall be required.



DATED: September 15, 2010

B. Lynn Winmill
Chief Judge
United States District Court