UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALICE LEITTER, CHRISTOPHER BOYLE, DORIS ANDERSON, RUSSELL ANDERSON, NOREEN DAINES, and ELLEN BROWER,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD ARMSTRONG, in his Official Capacity as Director of the Idaho Department of Health and Welfare,<br><br>Defendant. | Case No. 1:10-cv-361-BLW<br><br>**ORDER ON MOTION TO LIFT TEMPORARY RESTRAINING ORDER** |

Before the Court is a Motion to Lift Temporary Restraining Order (Dkt. 22) by Defendant Richard Armstrong, Director of the Idaho Department of Health and Welfare (IDHW). The Court has considered the record and parties' pleadings, and heard oral arguments from counsel at hearing on January 25, 2011. The Court will deny the motion, and require IDHW to devise a more individualized system for notice as described more fully below.

**BACKGROUND**

Plaintiffs are developmentally disabled individuals who brought this suit seeking

to enjoin the IDHW, of which Defendant Armstrong is Director, from implementing a rule change that would eliminate Aid to the Aged, Blind and Disabled (AABD) benefits to certain recipients, including Plaintiffs. Plaintiffs moved to temporarily restrain Defendant from implementing the rule changes, pending this litigation. The Court heard oral arguments from the parties on September 3, 2010, and determined that Plaintiffs and the proposed class of developmentally disabled individuals lack sufficient capacity to meaningfully understand a notice of the reduction in their AABD benefits. *Order*, Dkt. 14 at 5. The Court concluded that actual notice must be given to someone competent to meaningfully understand the notice, and who is in a position to act on the affected individual's behalf. *Id.*

Accordingly, the Court entered an order that temporarily restrained Defendant from implementing the rule changes at issue, to those individuals who will be affected by the changes, who live with non-family Certified Family Home (CFH) providers, do not have a legal guardian, and have not yet filed an appeal of the benefit reduction. *Id.* at 9-10. The restraining order was deemed in effect, and would not be lifted until Defendant proposed, and the Court approved, a plan for Defendant to provide meaningful notice to those individuals. *Id.* As to affected individuals who live with family-member CFH providers, or who have had a legal guardian since the time they were admitted to their CFH, or who have already filed an appeal, the restraining order was denied. *Id.*

Defendant now moves the Court to lift the restraining order, asserting: (1) that Defendant identified those individuals as to whom the Court had restrained

ORDER ON MOTION TO LIFT TRO - 2

implementation of the rule changes for AABD benefits, and (2) that Defendant has a proposal to provide meaningful notice to those individuals. Having reviewed Defendant's proposal and considered the arguments of counsel, the Court finds that Defendant has identified the appropriate group of individuals, but Defendant's plan to provide notice is insufficient.

ANALYSIS

1.  **Defendant Has Correctly Identified The Individuals For Whom The Temporary Restraining Order Applies**

    Defendant has identified a group of 255 individuals affected by the Court's order temporarily restraining implementation of the AABD benefits rule change. Although Plaintiffs expressed concerns that Defendant failed to accurately capture all individuals affected by the Court's order, it appears, through detailed affidavits of IDHW Medicaid Program Manager Alberto Cruz, that no affected individuals were omitted. *See Cruz Affs.*, Dkts. 22-2, 27-1.

2.  **Notice To Disability Rights Idaho Or To Idaho Legal Aid Is Insufficient To Ensure Actual Notice**

    Of the 255 individuals affected by the Court's temporary restraining order, 130 had appointed guardians with confirmed mailing addresses.[1] As to these 130 individuals, the Court agrees that notice to appointed guardians would be sufficient. Plaintiff proposes to provide notice to the remaining 125 affected individuals by sending their

---

[1] Three others, in addition to the 130, had appointed guardians who were mailed Notices of Restoration; however, their notices were returned to sender with no forwarding information. *Def's Mot.,* Dkt. 22-1 at 4.

notices to the legal advocacy group Disability Rights Idaho (DRI).

Due process is not rigid, but should provide those procedures necessary to ensure meaningful notice and an opportunity to be heard, in light of the facts and circumstances. *See Mathews v. Eldridge*, 424 U.S. 319, 321 (1976) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Court here found there was a likelihood of harm that full relief could not be provided at a post-deprivation hearing. *TRO*, Dkt. 14 at 4-5. In its order requiring IDHW to devise a plan to notify affected individuals, the Court offered, among other suggestions, that the plan might include "an automatic appeal of the benefit reduction on behalf of the affected individuals by an organization like DRI." *Id.* at 10-11. As stated above, IDHW essentially proposes this very plan.

According to the Legal Director for DRI, Mary Jo Butler, if DRI were to receive the 125 notices, DRI lacks sufficient resources and staffing to act on behalf of each of the individuals. *Butler Decl.*, Dkt. 25-2, ¶ 8. While DRI provides legal advocacy services to represent developmentally disabled persons in disability-related cases, and to investigate abuse and neglect in facilities and community living situations, only a small percentage of its funding is dedicated to representing individual clients in appealing Medicaid denials. *Id.* ¶¶ 4, 6. Butler conferred with Richard Eppink, the Justice Architect for Idaho Legal Aid (ILA) regarding AABD cash termination cases. According to Eppink, DRI has already been referring these cases to ILA, and any notice regarding cash termination that DRI receives in the future would also be referred to ILA. *Eppink Aff.*, Dkt. 25-1, ¶ 17. Eppink indicates that ILA has 66 cases (as of 12/28/10) and is simply unable to handle as

many as 255 additional AABD cash termination cases.

IDHW argues that representation of the 125 individuals whose notice is at issue would not be so arduous as Plaintiffs assert. The interests of those 125 individuals in receiving AABD benefits, IDHW proposes, could be represented in consolidation or through a test case, since Plaintiffs' action challenges the Department's rule change as a whole, rather than in any individual's case. *IDHW Reply*, Dkt. 27 at 7. IDHW is correct that Plaintiffs' complaint challenges the overall legality of the changes to Idaho's AABD program. *Am. Compl.*, Dkt. 16 at 13-14. But Plaintiffs assert that individualized notice and legal representation are needed to address the applicability of the benefits changes to each affected individual; the 125 individuals for whom notice is in question are not entirely homogenous. For example, counsel for Plaintiffs noted in oral argument that a number of AABD benefit recipients were deemed ineligible because they did not have SSI, but the recipients allege they do have SSI.

Given the evidence before the Court, the 125 benefits recipients appear to fall into two categories, with respect to their potential challenges to IDHW's proposed rule changes. The vast majority of the 125 individuals would simply challenge the overall validity of the rule change. An unknown minority of individuals might instead challenge their designation as ineligible. An across-the-board challenge to the validity of the rule change would not hurt this latter group; however, in the event that a consolidated challenge to the rule change fails, the interests of those in the latter group would be lost, absent individualized representation. There is no way to determine in which category

**ORDER ON MOTION TO LIFT TRO - 5**

each benefits recipient falls without meeting with them individually.

The Court concludes that, to satisfy due process in this case, notice must include individual meetings with each of the 125 individuals at issue. The meetings need not be with a licensed social worker nor an attorney. However, a checklist of items must be addressed to reflect good faith efforts by IDHW to: notify each individual of the rule changes; determine whether he or she wishes to challenge the general validity of the changes; determine whether he or she challenges IDHW's finding of ineligibility, and why; provide basic information about his or her right to appeal, which may include that notice of his or her responses will be provided to ILA.

Based on the affidavits of Eppink and Butler, submitted by Plaintiffs, the Court finds that DRI and ILA lack the personnel to perform what is needed for notice here. *See Eppink Aff.*, Dkt. 25-1; *Butler Decl.*, Dkt. 25-2. However, once the affected individuals' various challenges – if any – to the rule changes are identified, ILA may be able to undertake a consolidated appeal representing those challenging the validity of the rule, as well as some finite number of challenges to individual determinations of ineligibility under the proposed rule change.

With respect to IDHW's procedure for providing notice to the 125 affected individuals, the Court notes that the rules governing eligibility for AABD benefits require applicants to "participate in a telephone interview unless good cause exists," and also that "the Department may require a face-to-face interview." ID ADC 16.03.05.052. Thus it appears IDHW engages in one-on-one contact with benefit applicants as part of its

ORDER ON MOTION TO LIFT TRO - 6

administration of AABD benefits.  Presumably, the same staff who perform these personal interviews, per ID ADC 16.03.05.052, could also perform personal interviews regarding notice.

Accordingly, the Court will deny IDHW's motion to lift the temporary restraining order.  The Court will direct IDHW to propose a checklist and interview procedure which govern the one-on-one interview between IDHW staff and each of the 125 affected individuals.  Plaintiffs' counsel and IDHW counsel will then attempt to reach agreement on the content of that checklist and interview procedure, keeping in mind the Court's suggestions outlined above.   The Court will, of course, expect both parties to act in good faith towards reaching an agreement.   If an agreement cannot be reached, IDHW may submit its proposed checklist with a renewed motion to lift temporary restraining order.  The Court will make every effort to schedule a hearing on such motion as soon as possible.

**ORDER**

**IT IS ORDERED THAT:**

1. Defendant's Motion to Lift Temporary Restraining Order (Dkt. 22) is **DENIED**.

2. The restraining order shall remain in effect until IDHW has proposed, and the Court has approved, a checklist and interview procedure, which will be used in good faith by IDHW staff, as part of an in-person interview with each of the 125 affected individuals at issue.



DATED: **February 13, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**ORDER ON MOTION TO LIFT TRO - 8**